No. All right. I understand that everyone is here, at least with respect to the first three cases. And so we'll start with the United States v. Stasselberg. Good morning, Your Honor. May it please the Court, my name is Harry Sandick. I'm a partner at Patterson, Delknap, Webb & Tyler, and I represent Dr. Stasier on appeal. I didn't represent him in the District Court. We're here asking for a limited remand on two issues relating to the supervised release component of his sentence where the District Court erred. First, the District Court mistakenly imposed a four-year sentence of supervised release where the statutory maximum is three years. We're asking the Court to remand or correct it here. With respect to his supervised release component, the District Court imposed really a remarkable sentence of supervised release community service, essentially 4,000 hours. He did it, didn't he, in response to the pleading of, please, please, don't send me to prison at all. I'm so valuable as a member of the community, as a volunteer. I don't mean demean him, but sort of the pitch that he was making to the Court. Isn't that so? Well, Your Honor, he did say something like the District Court could impose another 1,000 hours of community service. The probation office here had recommended 500 hours over five years as part of a probationary sentence, so essentially 100 hours a year or viewed weekly two hours a week. And Dr. Stasier's lawyer said, essentially, you could add 1,000 hours to that if you felt that that would be an appropriate way to resolve this sentencing. Asking for a significant amount of . . . I don't divide so good. 1,000 hours would be how much a week? Sure. 1,000 hours for a five-year term would be 200 hours each year. And so if we then divided that by 50, it would be four hours. So he was . . . probation recommended two hours. His lawyer said even if you gave him four hours more for six hours . . . he didn't frame it as six hours a week. He framed it as 1,000 hours, but over a five . . . excuse me, Your Honor. Over a five-year term of probation, it would amount to essentially six hours total a week. What he got was 20 hours a week, essentially when you factor in transportation and the need to take a lunch break, three days a week of community service. The district court also gave him the routine condition of supervisor release that he work 30 hours a week. There's a lot more going on here than these comments you're making suggest. Do you think his sentence was substantively unreasonable? Well, we do think in light of Parkins that this component of the sentence was substantively unreasonable. Do you think the sentence . . . the period of incarceration of a year and a day in light of the conduct that your client was engaged in was substantively unreasonable, too low? We are not . . . absolutely, we are not arguing that. He pled guilty in a stipulated agreement. We honor the agreement. It contained a range. This was under the range, although over what the probation office recommended. The lesson of your appeal here is that kind of no good deed goes unpunished. I looked at the conduct that your client was engaged in and I found it absolutely shocking. A man of his background who was essentially an underwriter, a financer for prostitutes and brothels, and then he goes before Judge Kaplan and makes this plea about family circumstances. I have an invalid wife who will be greatly disadvantaged if I'm given a period of incarceration. And yesterday we find out that that's largely fanciful. It just . . . it verges, it seems to me, on a misrepresentation to the district court. She is looking for and apparently received an order of protection against him. And then, you know, he's telling Judge Kaplan that he has his children who he's got to take care of. They're all adults. And then after what he's doing, he's complaining about a substantial break he gave your client. Well, Your Honor, let me try to address each piece of this. Please do. With respect to the underlying conduct, he's pled guilty to that. He's acknowledged that it was wrong, it was illegal, and he took responsibility. He waived indictment. He entered into a plea agreement. He did everything in that sense that a person could do afterwards. His background for what? 30 to 37 months. The probation office recommended no incarceration. Judge Kaplan came somewhere in between at a year and a day. For money laundering, right? That was for money laundering. He gave money to . . . This is all about money laundering. That's right. Not being involved in prostitution business. It's just money laundering.  The real question here, I think, is whether we should send it back for a plenary resentencing or whether the sentencing should be limited. In light of Judge Parker's observations, wasn't the sentence intertwined here, that the prison term and the community service and all of it? And shouldn't we let the district judge decide whether he wants to unravel it and do it again? Well, the answer is no, Your Honor. The court has never, as far as we can tell, I don't think the government cited the case, found a case where it has taken a supervised release condition and said that that essentially undoes the knot of sentencing. The presumption here in Quintieri and other . . . Why shouldn't this case be the case? I mean, given defense counsel's plea regarding community service, given what is at least arguably a relatively light prison sentence for what he did, given . . . I think it's pretty clear that Judge Kaplan factored all of that in. Given the new information regarding the state court proceedings, given that Parkin is now guidance, why shouldn't we just send it all back and let Judge Kaplan do a plenary resentencing? Well, because, Your Honor, what this court has said is that one reason not to do a plenary resentencing is because that would essentially create an undue risk of deterring others from subsequent challenges to the sentence. Nobody in Dr. Stasier's position could say in order to challenge, for example, the plainly illegal extra year of supervised release, that I'm going to go back to Judge Kaplan and give the government another opportunity to argue again to send him to jail for a longer period of time. Essentially, what that would be saying is that if you want to challenge a condition of release, whether the judge tied it to the sentence of imprisonment or not, because here nothing Judge Kaplan said in his two and a half pages of explanation, nothing ties the specific community service condition into the prison sentence. It isn't a case like Bone, the fine case, where the judge said, I'm giving you . . . . . . defense counsel's argument ties it in, the totality of the circumstances? Well, in Burden, the court looked at that specific issue, Your Honor, and said that if the discussion is inflected with punishment, you send it back and let the district court look at the supervised release issue again. And in Burden and in Parkins, where the government consented to remands, never suggested that it had to go back for a plenary remand to give the district court an opportunity to impose more prison time as part of the decision about community service. The reason why you can't do the tradeoff between supervised release and imprisonment the same way you can for a fine and imprisonment, or imprisonment on one count and imprisonment on another, is that supervised release is not supposed to be punishment for what he did. The imprisonment and the $220,000 or $210,000 of criminal forfeiture, that's the punishment. It's not punishment, but it is a reason to allow him to get out of jail early so he can do that for the benefit. It's not a question of punishment. It's a question of what's a just sentence for him and for society, and that includes, okay, we'll let you out after a year, but we expect also for you . . . I don't see that so much as punishment as giving back to society what he's taken from it. Which he promised he did, and he would do, and which he said he wanted to do. And now you're coming and telling us, well, he didn't really want it that much, and let's knock it down. Well, Your Honor, we're not saying that he didn't want it that much or that he won't do it. Obviously, he'll do the sentence that he's sentenced to. What we're saying is that the waiver argument that the government is making, that we've waived the right to challenge 20 hours a week of supervised release because we asked for six hours, that would be like in a case involving imprisonment, to say that a defendant who said a year and a day would be appropriate and he got 20, hey, he agreed that some imprisonment was appropriate. I suppose if we were to remand it as a, to use the technical term, a do-over, to start from the beginning and do it afresh, he could do fewer hours or more hours if we did it that way. I think, Your Honor, if the court's decision, and we asked for this in a footnote, I think, in our briefs, is that it's a plenary remand or nothing, we would request some period of time to consult with our client to decide whether he wants to do that. I mean, as much as he feels and we feel that a four-year sentence of supervised release is plainly illegal, the idea of going back to the district court and exposing yourself to another year of jail in order to reduce these other commitments, no defendant would ever appeal a condition of supervised release. And all the time, this court reverses conditions of supervised release, computer usage, alcohol rules, all sorts of things, and this court has never, as far as we know. You don't have, those cases don't have the component that you do. These long presentations you made about these extenuated family circumstances, and, you know, Judge Kaplan was sympathetic. And now, you know, what are we to make of that? Doesn't look like much of that, looks like a substantial part of that just simply wasn't true. Your Honor, we don't agree with that, and let me tell you why. Please do. Because at the time of the sentencing, none of that was known to trial counsel or to the probation office who interviewed my client's estranged wife. None of the things that were in the order of protection were known to be true. We also have opposed the government's motion. She was discussing conversations she had with, that he had with her, about his consorting with prostitutes. Yes, Your Honor, but what I'm saying is that the nature of the order of protection, which we've argued is not appropriately part of judicial notice, because it's a way to funnel hearsay evidence before the court that are. . . It's a court order. The court order, however, is an ex parte order obtained while Dr. Stasier was in custody. He hasn't litigated the order, and some of the things that Mrs. Stasier said are different from what she said to the probation office. This court, in its judicial notice cases, which we've cited in our opposition papers, say you take notice of something that is essentially uncontested, the fact of the filing of a lawsuit. We don't object to the notion. . . The best course is to have Judge Kaplan sort all that out. If the case is remanded to Judge Kaplan, that is the proper place, Your Honor, for fact finding. The question is the scope of the remand. All right. I'm sorry. You're well over. You'll have some rebuttal time. We'll hear from the government. Thank you. May it please the Court, my name is Danielle Sassoon, and I represent the United States. You represent the government below, too. I did. I did not argue at sentencing, but I was present, Your Honor. I'd like to pick up on this issue. Can you, as a preliminary matter, I can't walk off, walk out of this courtroom without having somebody try to explain to me why this is, given the facts, as Judge Parker has reacted to them and as we have all read, how is this a money laundering case rather than something having to do with what appears to be a huge prostitution business? Yes, Your Honor. All of the defendants charged in this case were charged with money laundering because of their use of the proceeds of prostitution to further the prostitution business, including through advertising. Is there no federal crime? I mean, would it have been human trafficking? There was no trafficking here, but some defendants were charged with Travel Act and Man Act crimes, but this defendant in particular provided money to the brothels in order to further their business. The question is why wasn't he charged with trafficking or something similar? That was the most severe federal crime we were able to charge. We did not satisfy all the elements of sex trafficking, Your Honor. Okay. I'd like to pick up on this point about plenary remand, and that is absolutely appropriate here. This is not an ordinary case. This is a case where the defendant invited this outcome in two important respects. First, by asking for an enormous amount of community service, and that request was not limited to one statement about being able to do an additional 1,000 hours. The entire sentencing transcript is replete with references to his ability to do an enormous amount of work, to be put to work every day, and also he invited this outcome by saying there are alternatives to incarceration, specifically community service. And that's what indicates that this is one not of a sentence and that you can't undo one part without sending the entire thing back. The concern here is not deterring future claims. It's potential gamesmanship, which is what is going on here. The defendant wants a heads-I-win, tails-you-lose scenario where he got the benefit of his request for a lower jail sentence and more community service and now wants to retain that benefit of a lower jail sentence while also reducing the community service component. You didn't cross-appeal the sentence. We cited authority in our brief for why that's not necessary. There's authority for the fact that if the defendant is appealing the sentence, the government can request a plenary remand to revisit the entire sentence. Now, with respect to this one not of a sentence, do you notice that if we are going to remand for plenary resentencing that we give the defendant some time to think about it? Absolutely, Your Honor. This court is not in the business of issuing advisory opinions, and that is what that request is. The defendant has been on notice that we are seeking plenary resentencing. He has the opportunity to withdraw his appeal now, between now and when the court issues an opinion, but giving him time to withdraw the appeal reinforces the gamesmanship that's at play here, and the attempt by this defendant to... I'm not even absolutely certain that simply withdrawing his appeal now is up to him. I'm not saying it's otherwise, but I wouldn't take that as a given. Yes, Your Honor. The variety of requests that the defendant is making in his brief indicate that he would not like this sentence to go back before Judge Kaplan,  what Judge Kaplan was trying to do with his sentence here. And so you have a request for a limited remand. You have a request for the court to modify the judgment without sending it back to Judge Kaplan. There is no authority for modifying a judgment in this type of substantive way. And it's clearly an effort to prevent Judge Kaplan from being able to impose the sentence he intended to impose and to achieve the deterrent, rehabilitative, and punitive effects that he intended. And to fully understand all the circumstances before. Correct, Your Honor. In addition, it is true that community service should not serve a punitive purpose, but here the defendant is arguing precisely that. He has made the argument that the sentence was unreasonable because Judge Kaplan imposed community service for a punitive reason. If you accept that argument, that necessarily means that this is one entire knot of sentencing. And so the defendant's argument is in tension with itself. If you accept that it was punitive, then necessarily the entire thing has to go back. If you don't accept that it was punitive, then that goes to the fact that this was not an unreasonable sentence. And I'd also like to turn to Parkins, which appellate counsel has raised numerous times. We are not remotely in the world that was before the court in Parkins. There the court was evaluating a community service condition against the baseline of 400 hours that is in the sentencing guidelines. However you understand the invited outcome by Dr. Stacey O'Heir, at the very least he took the court to a floor of 1,500 hours of community service, which is well beyond the ceiling that is in the sentencing guidelines. And so this case cannot be compared to Parkins, where what we're looking at as the very minimum baseline is 1,500 hours of community service, which is not what was before the court in Parkins. Moreover, in Parkins, as the circuit pointed out, the defendant there was fairly ordinary. His crime was fairly ordinary. The facts and circumstances identified by the court were fairly ordinary and failed to explain why going above 400 hours would be appropriate. We're in a very different situation here where, for one, the defendant requested an enormous amount of community service, but two, Judge Kaplan noted that this defendant was extraordinary compared to the defendants that had appeared before him in his 25 years on the bench, including because of his privileged circumstances. Extraordinary, I thought, meant largely in a semi-positive way. I'm not using it in a positive way. We are not in an ordinary case. We are in a case that's extremely unusual, given the privileged circumstances of this defendant and given that he put forward to the court that he was in a unique position to give back to the community by performing hours of work a day, which is well beyond six hours a week. In addition, going back to the plenary or limited remand, and I want to address specifically this issue of three versus four years of supervised release. We've conceded that that was an error, but even if the court decides there was no other error in the sentence, we still believe it needs to go back for a plenary resentencing because in evaluating the appropriate sentence, Judge Kaplan clearly considered that there would be four hours of community service performed. If that is reduced by 25%, that's reducing the overall rehabilitative or deterrent effect of his sentence, which may affect how he thinks about the prison term he imposed And I just want to emphasize that here, the policy concern is not deterring defendants from raising meritorious claims. I think the overriding policy concern that animates this case is gamesmanship, and that's both the gamesmanship at the district court level, which was to seek a lower jail sentence by making representations about an ability to do an inordinate amount of community service, which is exactly what Judge Kaplan then did. And now here, a request to have this court tinker with the sentence without Judge Kaplan having the ability to assess whether it's consistent with what he intended. If the court has no further questions. Thank you. We'll hear the rebuttal. Your Honor, just on a couple of issues. On the subject of the ability to withdraw an appeal, that request is not something that I came up with. This court has done that in other similar circumstances. Yes, I'm not sure I would be. I would not be too sure that you have the right to do that once it's submitted to the court. I mean, before it's before the court and argued and briefed, and it's ours in front of us, you can do it. I think it's a matter of some dispute whether you can simply say, well, I don't think the argument went too well, now we're going to withdraw the appeal. I don't think it works that way. I feel, Your Honor, as if I've seen even in published opinions, the court giving defendants the opportunity where a victory turns out not to be a victory. It can. And we're asking for that here because... Why? Why should we give you that? Well, Your Honor, the reason why is because particularly the four versus three years of the sentence is just a plain error by the district court. There is no purpose served by allowing that aspect of the illegal sentence to stand. But if the price of challenging that is that he can face an additional year of jail time in order to correct the supervised release sentence, it just doesn't seem like that's something... It strikes me as more and more gamesmanship, as Sessom says. Well, Your Honor, we're not here to engage in gamesmanship. Really? Yes, Your Honor. You have a client, Cornell University, Harvard Medical School, Massachusetts General Hospital for post-medical school training, and he is financing prostitution rings, and we all know who is exploited in that context and what the emotional havoc that gets wreaked is. He went to prostitutes and he gave money to the women he knew and worked with and was not making a profit from this but has fully accepted it. He was what? This was not about a profit-making enterprise. He was not making profit from it? What about the exchange with the woman who had health concerns and he was telling her that, well, if you sleep with me more, let me sleep with you and see whether you're bleeding. I'm not defending. And then that was tied into how much money she was giving him. I'm not defending that, Your Honor. Well, yes, you were. No. You were sort of downplaying it. Well, you know. Absolutely not. We're not challenging any aspect of the conviction or that what he did is wrong. What we're saying is that the supervised release component should be based not on punishment but on other factors of sentencing, and that the four years versus three years is just an obvious mistake. I don't think Judge Kaplan meant to go in excess of the statutory maximum for supervised release. But if the price of that is a total resentencing, I don't think anyone would challenge even an excessive year. Most of your brief was devoted to the length of community service. Yes. You backed away from that. No, I'm not backing away from that. It's a tremendous amount of community service. It's far in excess of what he asked for. The waiver argument works. If he got six or eight hours a week, he got 20. It's a three-day-a-week commitment. On the other hand, Judge Kaplan gave him what I would consider a shockingly low sentence, a shockingly low period of incarceration. It was higher than what the probation office recommended. It was lower than his guidelines range. The government did not elect to cross-appeal that as a separate matter. I would ask the courts allowing him to decide if he wants to withdraw this appeal, not because of the hostility of the reception of the argument, as has been suggested. How can you say that? Really? No. Because of even if the — just because of the possibility that the court will give a plenary remand, oftentimes the court in the decision will address the issue where a win is not a win. You knew that possibility when you started to draft your brief. I'm sorry, Your Honor? You knew that was a possibility when you started to draft your brief. You knew that from day one that you were risking a plenary remand. You argued against it, and you hoped that it would prevail. But, in fact, I gather you put a footnote in suggesting the possibility. In our reply brief, given the government's position in their brief, we did ask for that. We have your argument. Thank you. Thank you, Your Honor.